UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

LARRY MURRAY                                   CIVIL ACTION

VERSUS                                         NO. 15-0827-BAJ-EWD

BURL CAIN, WARDEN

### NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on March 5, 2019.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

LARRY MURRAY                                          CIVIL ACTION

VERSUS

BURL CAIN, WARDEN                                     NO. 15-0827-BAJ-EWD

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before this Court is the application of Petitioner Larry Murray ("Petitioner") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the following reasons, Petitioner's application should be denied. There is no need for oral argument or an evidentiary hearing.

**I.    Procedural Background**

Defendant Larry Murray was charged by grand jury indictment with second degree murder,[1] following which he was tried by a jury and found guilty as charged on April 30, 2010.[2] Petitioner was sentenced on August 19, 2010 to life in prison at hard labor without the benefits of probation, parole or suspension of sentence.[3] Petitioner pursued a direct appeal with the Louisiana Court of Appeal for the First Circuit ("First Circuit"), challenging the constitutionality of his sentence and the effectiveness of counsel in failing to file a motion to reconsider the sentence. The First Circuit affirmed the trial court's judgment on June 10, 2011.[4] Thereafter, Petitioner sought review with the Louisiana Supreme Court. Petitioner filed his writ application with the Louisiana Supreme Court on July 20, 2011, though it was due on July 11, 2011. The Louisiana Supreme Court denied Petitioner's writ application on April 13, 2012.[5]

---

[1] Trial Record, p. 16.
[2] Trial Record, pp. 125 & 684.
[3] Trial Record, p. 128.
[4] *State v. Murray*, 2010 KA 2239, 2011 WL 3423803 (La. App. 1 Cir. 6/10/11).
[5] *State ex rel. Murray v. State*, 2011-KH-1666, 2012 WL 1384683, 85 So.3d 1243 (La. 4/13/12).

Following the direct appeal, Petitioner filed an application for post-conviction relief on January 17, 2013 raising the following grounds for relief: (1) ineffective assistance of counsel due to counsel failing to allow Petitioner to testify at trial; (2) ineffective assistance of counsel due to counsel's failure to object to testimony of Dr. Edgar Shannon Cooper and David Fountleroy, which testimony Petitioner alleged constituted violations of the Confrontation Clause of the Sixth Amendment; and (3) prosecutorial misconduct resulting in a violation of the Fourteenth Amendment's right to a fair trial. The trial court denied Petitioner's application for post-conviction relief on August 27, 2013. Petitioner again sought review at the First Circuit and the Louisiana Supreme Court. Petitioner's application was denied by the Louisiana Supreme Court in a *per curiam* opinion issued November 16, 2015.[6] Petitioner then filed the instant application for writ of habeas corpus with this Court on December 6, 2015.

## II.    Factual Background

The facts, as accurately summarized by the First Circuit, are as follows:

> On or about April 29, 2008, Matthew Trahan (the victim) contacted his close friend Walter Alexander, a resident of the Lafayette area, and asked him to accompany him to Baton Rouge, Louisiana to purchase forty ecstasy pills. The next day, Alexander agreed to take the trip with Trahan. When they arrived in Baton Rouge, the victim unsuccessfully attempted to contact a pill supplier by telephone.
>
> The victim encountered Jeremiah Pate when they stopped at a convenience store to get something to drink. Pate, who did not know the victim or Alexander at the time, agreed to direct the victim to a location Pate was aware of where the victim could purchase marijuana. Pate and the defendant (known to Pate from the neighborhood by his nickname, "Duke") entered the victim's vehicle along with Alexander. The victim was driving; Alexander was the front passenger; Pate was the left-rear passenger (seated behind the victim); and the defendant was the right-rear passenger. They made a brief stop at a house in the area, where only the defendant exited the vehicle and re-entered approximately five minutes later.

---

[6] *State ex rel. Murray v. State*, 2015-KH-0268, 2015 WL 7211175, 183 So.3d 497 (La. 11/16/15).

> After Pate called a marijuana supplier, the defendant pointed a gun at the victim and began firing it, striking the victim. Alexander grabbed his seatbelt and tried to exit the vehicle, but the defendant threatened to shoot him if he exited. The defendant then started demanding money. Alexander stated that he did not have the money. As the victim began shaking while still pressing the gas pedal, Alexander grabbed the steering wheel and the vehicle landed on the sidewalk and hit a stop sign. When the vehicle finally slowed down, Alexander and Pate jumped out of the vehicle and attempted to flee. However, the defendant stopped Alexander at gunpoint and ordered him to retrieve the cash that was hanging out of the victim's back left pocket. Alexander grabbed the money and tossed it toward the defendant. At that point, the defendant fled from the scene. The victim sustained three gunshot wounds to the right upper back or shoulder. The lethal wound was the shot that travelled through his aorta, causing him to bleed to death.[7]

### III. Timeliness

The State has raised, as a bar to review, that the current habeas petition is untimely. The basis for the State's argument is that, because Petitioner's July 20, 2011 writ application on direct appeal to the Louisiana Supreme Court was not timely filed, it did not toll the time for the filing of a federal habeas petition. 555 days passed between July 12, 2011 (the date after Petitioner's writ application was due to the Louisiana Supreme Court) and January 17, 2013 (the date Petitioner filed his first application for post-conviction relief, which was the next event that could have tolled prescription).

The State is correct that an untimely filing with the Louisiana Supreme Court is not a "proper" filing so as to toll the time for filing a federal habeas petition.[8] Thus, since Petitioner's

---

[7] *See State v. Murray*, 2011 WL 3423803, at *1.
[8] *See Williams v. Cain*, 217 F.3d 303, 308 (5th Cir. 2000) (finding that no exceptions and no examination are contemplated by Louisiana Supreme Court Rule X § 5(a) and, therefore, that compliance with the time requirement is necessary for a prisoner's application for post-conviction relief to be considered "properly filed" and "pending" under section 2244(d)(2)). *See also Jenkins v. Cooper*, Civ. Action No. 07-0216, 2009 WL 1870874, *5 (E.D. La., June 26, 2009) (holding that a petitioner does not benefit from any tolling for an untimely writ application filed in the Louisiana Supreme Court because "[a] writ application which fails to comply with La. S.Ct. Rule X § 5(a) is not properly filed because it is untimely, and it is not pending post-conviction review for purposes of the ... statute of limitations and tolling doctrines").

3

writ with the Louisiana Supreme Court was not timely filed, it was without effect for purposes of tolling the time period for seeking federal habeas relief.

In response, Petitioner argues that his writ application to the Louisiana Supreme Court should be considered timely because his filing was delayed due to flooding at the prison, which required the evacuation of inmates and which resulted in the tolling of his time period to file.[9]

The one-year federal limitations period is subject to equitable tolling only "in rare and exceptional circumstances."[10] The doctrine of equitable tolling "applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights."[11] It is the petitioner's burden to demonstrate that equitable tolling is warranted.[12]

Generally, a litigant seeking equitable tolling bears the burden of establishing the following two elements: (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance has stood in his way.[13] "A petitioner's failure to satisfy the statute of limitations must result from external factors beyond his control; delays of the petitioner's own making do not qualify."[14] Ignorance of the law, lack of knowledge of filing deadlines, or a temporary denial of access to research materials or an adequate law library are generally not sufficient to warrant equitable tolling.[15] Further, equitable tolling "is not intended for those who sleep on their rights."[16]

---

[9] R. Doc. 11.
[10] *See United States v. Patterson*, 211 F.3d 927, 928 (5th Cir. 2000).
[11] *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999), *abrogated on other grounds by Richards v. Thaler*, 710 F.3d 573, 578-79 (5th Cir. 2013).
[12] *Hardy v. Quarterman*, 577 F.3d 596, 598 (5th Cir. 2009).
[13] *Pace*, 544 U.S. at 418.
[14] *Id. quoting In re Wilson*, 442 F.3d 872, 875 (5th Cir. 2006).
[15] *Tate v. Parker*, 439 F. App'x. 375, 376 (5th Cir. 2011) *citing Felder v. Johnson*, 204 F.3d 168, 171-72 (5th Cir. 2000) and *Scott v. Johnson*, 227 F.3d 260, 263 & n. 3 (5th Cir. 2000).
[16] *Manning v. Epps*, 688 F.3d 177, 184 (5th Cir. 2012).

Thus, a federal habeas petitioner is required to act with diligence[17] and alacrity both during the period allowed for the filing of state post-conviction review proceedings and after the denial thereof by the state appellate courts.[18]

Petitioner seeks equitable tolling on the following bases: there was a "state of emergency declared upon the Louisiana State Penitentiary Angola, La. from May – 2011 through July-2011," the state of emergency resulted in tolling the time period for filing his writ application, and his writ application was timely filed when evacuated inmates returned to Angola.[19] This Court previously found that similar arguments established equitable tolling.

In *Jackson v. Cain*,[20] the petitioner filed his application for review to the Louisiana Supreme Court nineteen days late. Although the writ application was untimely, the petitioner argued that he was entitled to equitable tolling because of evacuations at the Louisiana State Penitentiary due to the threat of rising water and potential flooding by the Mississippi River in spring 2011. This Court found that this was one of the "rare and exceptional" circumstances where equitable tolling was warranted.

Although this is a closer question,[21] equitable tolling appears to be warranted. Petitioner submitted a declaration attesting that between May and July of 2011, during which the decision

---

[17] "The diligence required for equitable tolling purposes is reasonable diligence, . . . not maximum feasible diligence," and equitable tolling decisions must be made on a case by case basis. *Holland v. Florida*, 560 U.S. 631, 649-50, 653 (2010) (internal quotation marks omitted).
[18] *See Ramos v. Director*, Civ. Action Nos. 6:09cv463/6:09cv477, 2010 WL 774986 at *4 (E.D. Tex. Mar. 1, 2010).
[19] R. Doc. 11-1.
[20] Civ. Action No. 12-cv-00767-BAJ-RLB, 2014 WL 4678808 (M.D. La. Sept. 19, 2014).
[21] Petitioner here does not provide as much evidence at the petitioner in *Jackson* to establish that equitable tolling is warranted. First, Petitioner does not expressly allege that he is one of the inmates who was actually evacuated from Angola. Additionally, in *Jackson*, the Court relied on the fact that official correspondence from the Louisiana Supreme Court, the Louisiana Department of Public Safety and Corrections, and the Louisiana State Penitentiary indicated that from May 9, 2011 through June 20, 2011, "evacuation and relocation of offenders assigned to the Louisiana State Penitentiary made it extremely difficult for them to file their legal documents, with the courts, in a timely manner." The Court goes on to note that then Warden Cain sent a letter to the Louisiana Supreme Court stating: "Due to the state of emergency and over-crowding [caused by the evacuation], correctional facilities did not have sufficient time, space or staff to allow offenders access to law libraries and other legal resources …." *Jackson*, 2014 WL 4678808

5

from the First Circuit was rendered on direct appeal, the Louisiana State Penitentiary was under a state of emergency due to flooding.[22] Flooding was impacting the area around the Louisiana State Penitentiary, and as a result, inmates were evacuated from Angola. This event constitutes an extraordinary circumstance. Moreover, Petitioner's filing with the Louisiana Supreme Court was only eight days late, as it was filed on July 20, 2011. As Petitioner has shown he is entitled to equitable tolling, an analysis of the merits is warranted.

IV.   **Standard of Review**

The standard of review in this Court is that set forth in 28 U.S.C. § 2254(d). Pursuant to that statute, an application for a writ of habeas corpus shall not be granted with respect to any claim that a state court has adjudicated on the merits unless the adjudication has "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Relief is authorized if a state court has arrived at a conclusion contrary to that reached by the Supreme Court on a question of law or if the state court has decided a case differently than the Supreme Court on a set of materially indistinguishable facts.[23] This standard is difficult to meet.[24] Relief is also available if the state court has identified the correct legal principle but has unreasonably applied that principle to the facts of the petitioner's case or has

---

at *2. Petitioner's July 11, 2011 due date for filing his writ application with the Louisiana Supreme Court is slightly outside the time periods in *Jackson*.

[22] R. Doc. 11-1. A brief review of public records confirms that beginning in April 2011 river flooding began in Louisiana. On May 6, 2011, President Barack Obama signed a Louisiana Emergency Declaration declaring a state of emergency due to flooding. One Parish listed as affected was West Feliciana Parish, the parish in which the Louisiana State Penitentiary sits. https://obamawhitehouse.archives.gov/the-press-office/2011/05/06/president-obama-signs-louisiana-emergency-declaration. It is not clear when the state of emergency ceased.

[23] *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

[24] *White v. Woodall*, 572 U.S. 415, 419 (2014).

6

reached a decision based on an unreasonable factual determination.[25] Mere error by the state court or mere disagreement on the part of this Court with the state court determination is not enough; the standard is one of objective reasonableness.[26] State court determinations of underlying factual issues are presumed to be correct, and the petitioner has the burden to rebut that presumption with clear and convincing evidence.[27] Applying this standard to Petitioner's claims, there is no basis for the granting of habeas relief.

V.      **Substantive Review**

   A.  *Claims 1 & 2: Ineffective Assistance of Counsel*

Petitioner asserts his counsel was ineffective for two reasons: (1) not allowing Petitioner to testify and (2) failing to object to testimony that Petitioner alleges violated the Confrontation Clause.[28] A habeas petitioner who asserts that he was provided with ineffective assistance of counsel must affirmatively demonstrate (1) that his counsel's performance was "deficient", *i.e.*, that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment; and (2) that the deficient performance prejudiced his defense, *i.e.*, that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial in which the result is reliable.[29] The petitioner must make both showings in order to obtain habeas relief based upon the alleged ineffective assistance of counsel.[30]

To satisfy the deficiency prong of the *Strickland* standard, the petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness as measured

---

[25] *See Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000).
[26] *Id*. *See also Williams v. Taylor*, 529 U.S. at 409 ("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable").
[27] 28 U.S.C. § 2254(e)(1).
[28] R. Doc. 1-1, pp. 6; 12.
[29] *Strickland v. Washington*, 466 U.S. 668, 687 (1984) *superseded on other grounds by* Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214.
[30] *Id*.

7

by prevailing professional standards.[31] The reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence and that, under the circumstances, the challenged action might be considered sound trial strategy.[32] This Court, therefore, must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial.[33] Great deference is given to counsel's exercise of professional judgment.[34]

If the petitioner satisfies the first prong of the *Strickland* test, his petition nonetheless must affirmatively demonstrate prejudice resulting from the alleged errors.[35] To satisfy the prejudice prong of the *Strickland* test, it is not sufficient for the petitioner to show that the alleged errors had some conceivable effect on the outcome of the proceeding.[36] Rather, the petitioner must show a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.[37] The habeas petitioner need not show that his counsel's alleged errors "more likely than not" altered the outcome of the case; he must instead show a probability that the errors are "sufficient to undermine confidence in the outcome."[38] Both the *Strickland* standard for ineffective assistance of counsel and the standard for federal habeas review of state court decisions under 28 U.S.C. § 2254(d)(1) are highly deferential, and when the two apply in tandem, the review by federal courts is "doubly deferential."[39] The above showing is one that Petitioner cannot make in the instant case.

---

[31] *See, e.g., Martin v. McCotter*, 796 F.2d 813, 816 (5th Cir. 1986).
[32] *See, e.g., Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988).
[33] *Martin v. McCotter*, 796 F.2d at 817.
[34] *Bridge v. Lynaugh*, 838 F.2d at 773; *Martin v. McCotter*, 796 F.2d at 816.
[35] *Earvin v. Lynaugh*, 860 F.2d 623, 627 (5th Cir. 1988).
[36] *Strickland v. Washington*, 466 U.S. at 693.
[37] *Martin v. McCotter*, 796 F.2d at 816.
[38] *Id.* at 816-17.
[39] *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

First, the Petitioner asserts his counsel was ineffective for failing to allow Petitioner to testify. With regard to whether an attorney has rendered deficient performance by interfering with a petitioner's right to testify, the courts have recognized that an attorney's decision not to call a criminal defendant to testify is normally "part of counsel's trial strategy" and is a "judgment call which should not easily be condemned with the benefit of hindsight."[40] In the instant case, Petitioner contends that he requested before and during trial to take the witness stand, but his trial counsel failed and refused to call Petitioner to the stand.[41] He further argues that a defendant's "right to testify in his own defense can only be waived by the defendant and not by his attorney."[42] At the same time, "it cannot be permissible trial strategy, regardless of its merits otherwise, for counsel to override the ultimate decision of a defendant to testify contrary to his advice."[43]

A habeas petitioner in this context has the burden of proving that he was denied this constitutional right, and it is not enough to merely state that he told his trial attorney that he wanted to testify and that his attorney forbade him from doing so.[44] In *Underwood*, the Seventh Circuit specifically noted the potential problems likely to arise if habeas petitioners making similar arguments were not required to satisfy the burden of proof.[45] The *Underwood* court recognized that such assertions, even if made under oath, were inadequate to meet that burden:

> [T]his barebones assertion by a defendant, albeit made under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him. It just is too facile a tactic to be allowed to succeed. Some greater particularity is necessary—and also we think some substantiation is necessary, such as an affidavit from the lawyer who allegedly forbade his client to testify—to give the claim sufficient credibility to warrant a further

---

[40] *See United States v. Mullins*, 315 F.3d 449, 453 (5th Cir. 2002).
[41] R. Doc. 1-1, p. 6.
[42] R. Doc. 1-1, p. 7.
[43] *United States v. Mullins*, 315 F.3d at 452.
[44] *See Reed v. Cain*, Civ. Action No. 13-0037, 2014 WL 2050613, *9-10 (E.D. La. Sept. 2, 2014); *Turcios v. Dretke*, Civ. Action No. H-97-0515, 2005 WL 3263918, *6 (S.D. Tex. Nov. 29, 2005), *citing Underwood v. Clark*, 939 F.2d 473, 475-76 (7th Cir. 1991).
[45] *Id.* at 475.

9

investment of judicial resources in determining the truth of the claim.[46]

Citing *Underwood*, the United States Court of Appeals for the Fifth Circuit has indicated having the same concerns, noting that "Courts have observed that allowing a bare assertion of a right-to-testify violation to precipitate the further investment of judicial resources is problematic."[47]

Petitioner makes a conclusory assertion that he wanted to testify and that his attorneys "failed and refused to call him …."[48] While Petitioner attempts to argue that defense counsel told the jury he would call Petitioner as a witness,[49] a review of the trial transcript does not support Petitioner's assertion.[50] Based on the complete absence of any corroborating evidence in the record, Petitioner has failed to meet the first prong of the *Strickland* test.

Further, even if Petitioner could establish that he was prevented from testifying at his criminal trial because of his attorney's deficient conduct, Petitioner would also need to establish that he was prejudiced as a result.[51] In light of the significant evidence of Petitioner's guilt in this case, including the photographic lineup identifications of Petitioner by Walter Alexander[52] and Jeremiah Pate,[53] who were both present in the car when the shooting occurred, and the testimony of Walter Alexander positively identifying Petitioner as the perpetrator of the crime,[54] there is little

---

[46] *Id.* at 476.
[47] *United States v. Martinez*, 181 F.3d 627, 628 (5th Cir. 1999).
[48] R. Doc. 1-1, p. 6.
[49] *Id.*, p. 7.
[50] As noted by Petitioner, in defense counsel's opening statement he states as follows: "When we present evidence we're going to tell you and then we'll stand up here at the end, we're going to tell you what we told you. But what I'm telling you now is that we're going to tell you through evidence, through presentation of witnesses, that Larry Murray didn't commit this crime." Trial Record, p. 443. While it is true that ultimately the defense did not call any witnesses in this case, the cited portion of the trial transcript does not indicate that defense counsel affirmatively stated to the jury that Petitioner would be called as a witness.
[51] *See United States v. Mullins*, 315 F.3d at 456 (finding that although the petitioner's attorney in fact prevented him from testifying at trial, the petitioner could show no prejudice resulting from the attorney's deficient conduct). *See also Bell v. Quarterman*, 330 F. App'x. 492 (5th Cir. 2009); *Graham v. Roberts*, 96 F.3d 1445 (5th Cir. 1996).
[52] Trial Record, p. 561.
[53] Trial Record, pp. 566-67.
[54] R. 538.

basis for concluding either that had Petitioner testified, the result of the proceeding would have been different, or that Petitioner's counsel's alleged errors were sufficient to undermine confidence in the outcome of the trial. Further, Petitioner has provided no information whatsoever regarding what his testimony would have been or how it might have favorably influenced the jury.

Second, Petitioner asserts his counsel was ineffective because he failed to object to the alleged Confrontation Clause violations, which occurred when Dr. Edgar Shannon Cooper was allowed to testify regarding the autopsy report.[55] Petitioner asserts that his right to confront his accuser was violated when Dr. Cooper was allowed to testify regarding the autopsy performed on the victim, which testimony included a discussion which wound(s) resulted in the victim's death.[56] Each of the three gunshot wounds were discussed in turn and Dr. Cooper noted the cause of death as bleeding from the gunshot wound that perforated the victim's aorta.[57] Dr. Cooper's testimony discussed a report drafted by Dr. Corrigan, the Assistant Coroner who performed the autopsy.[58] Dr. Cooper was Dr. Corrigan's supervisor. Dr. Cooper, though he did not perform the autopsy at issue in this case, was head coroner and was responsible for reviewing and approving all autopsy reports, including the one prepared by Dr. Corrigan regarding the victim in this case.[59]

In *Bullcoming v. New Mexico*,[60] the Supreme Court addressed the question of whether the Confrontation Clause permits the prosecution to introduce a forensic laboratory report containing a testimonial certification – made for the purpose of providing a particular fact – through the in-court testimony of a scientist who did not sign the certification or perform or observe the test reported in the certification. The Court held that such testimony did not satisfy the Confrontation

---

[55] R. Doc. 1-1, pp. 12-13.
[56] Trial Court Record, pp. 472-75.
[57] Trial Court Record, p. 473.
[58] Trial Court Record pp. 472; 476; 477.
[59] Trial Court Record, p. 477.
[60] 564 U.S. 647, 657 (2011).

11

Clause. However, as explained by the Fifth Circuit in *Grim v. Fisher*,[61] the Court in *Bullcoming* did not clearly establish the categorical rule that when the prosecution introduces a forensic laboratory report, the only witness whose in-court testimony can satisfy the Confrontation Clause is the analyst who performed the underlying analyses.

Citing to Justice Sotomayer's concurring opinion where she emphasized the limited reach of the Court's opinion in *Bullcoming*, the Fifth Circuit has noted "even after *Bullcoming,* it is not clear whether the testimony of the analyst in this case—who supervised and worked in the same lab as the analyst who did the actual testing—would violate the Confrontation Clause."[62] In the instant matter, Dr. Cooper was head coroner and was tasked with reviewing and approving all autopsies performed and the accompanying reports. There is no clearly established federal law which would require the testimony of Dr. Corrigan, and only Dr. Corrigan, to satisfy the Confrontation Clause.

Even if the Court were to assume a Confrontation Clause error, such errors are subject to a harmless error analysis.[63] In analyzing whether a Confrontation Clause error is harmless, the reviewing court should consider, "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, ... and, of course, the overall strength of the prosecution's case."[64] When the record is so evenly balanced that there is grave doubt as to whether the error had a substantial and injurious effect or influence in determining the jury's verdict, the error is not harmless.[65]

---

[61] 816 F.3d 296 (5th Cir. 2016).
[62] *See U.S. v. Johnson,* 558 F. App'x. 450, 453 (5th Cir. 2014).
[63] *See Delaware v. Van Arsdall,* 475 U.S. 673, 683 (1986)
[64] *Id.*
[65] *O'Neal v. McAninch,* 513 U.S. 432 (1995).

As noted by the Commissioner in his recommendation to deny Petitioner's PCR claim, "Dr. Cooper simply testified to the findings of Dr. Corrigan, indicating that the victim died as a result of gunshot wounds. The defense did not dispute that the crime was committed or that the victim died as a result of gunshot wounds, but whether it was the Petitioner who committed the crime." Accordingly, if admission of Dr. Cooper's testimony was in error, it was harmless. Petitioner has not shown that the alleged error had a substantial and injurious effect or influence in determining the jury's verdict. As such, the trial court's denial of Petitioner's PCR claim was not contrary to, or an unreasonable application of, clearly established federal law.

The Petitioner also alleges that Detective David Fauntleroy contradicts "the testimony of Dr. Cooper that three bullet [sic] was recover [sic] in the initial autopsy."[66] A review of the record does not reveal the inconsistency Petitioner alleges. Dr. Cooper merely testified that "all three bullets were recovered."[67] When the bullets were recovered, whether in initial autopsy or in a subsequent examination, is not mentioned. Even if this inconsistency existed, Petitioner has not shown that the testimony prejudiced his case. Again, the Petitioner's defense was not based on any allegation that the victim did not die from gunshot wounds; rather, Petitioner's defense was that he was not the perpetrator. Considering that it is questionable whether a violation of the Confrontation Clause occurred and due to the lack of prejudice to Petitioner resulting from the testimony of Dr. Cooper and/or Detective Fauntleroy, Petitioner is unable to meet his burden of establishing that habeas relief should be granted as to this claim.

---

[66] R. Doc. 1-1, p. 18.
[67] Trial Court Record, p. 472.

### B. Claim 3: Prosecutorial Misconduct

Petitioner alleges the prosecution solicited inadmissible testimony from witnesses to imply that Petitioner or someone in his family called and threatened Mr. Pate.[68] Petitioner focuses on specific testimony and comments regarding an alleged threat made to Jeremiah Pate. The prosecution questioned Mr. Pate regarding the last time he spoke to Petitioner, to which Mr. Pate responded that approximately two weeks prior to trial, one of Petitioner's family members gave Mr. Pate a phone with Petitioner on the other end.[69] Defense counsel objected to this questioning because the questioning was on redirect examination and was improper because it did not relate to questioning that occurred during cross-examination.[70] Accordingly, the objection was sustained.[71]

Petitioner also alleges prosecutorial misconduct regarding the questioning of Detective John Dauthier. Specifically, the prosecution asked Detective Dauthier what took so long for Mr. Pate to come forward as a witness.[72] Detective Dauthier responded, in part, as follows: "I think it's pretty clear that he was very scared and was avoiding us."[73] Defense counsel objected on the basis that Detective Dauthier's testimony was speculative, which objection was sustained.[74]

Finally, during closing arguments, the prosecution indicated that Mr. Pate, after trial, would have to return to the same neighborhood that the Petitioner was from.[75] The prosecution mentioned the alleged phone call from Petitioner to Mr. Pate, at which time an objection was made by defense

---

[68] R. Doc. 1-1, p. 24. Petitioner mentions in his argument regarding prosecutorial misconduct that vouching for the credibility of witnesses and expressing a personal opinion regarding guilt of the accused is improper. However, Petitioner does not appear to allege that either of these things occurred. Rather, it appears he is simply quoting the Supreme Court to begin his argument regarding the testimony solicited from Mr. Pate and Detective John Dauthier. (R. Doc. 1-1, pp. 23-24). Accordingly, the undersigned does not address these matters.
[69] Trial Court Record, p. 520-21.
[70] Trial Court Record, p. 521.
[71] Trial Court Record, p. 521.
[72] Trial Court Record, p. 564.
[73] Trial Court Record, p. 564.
[74] Trial Court Record, pp. 564-65.
[75] Trial Court Record, pp. 648-49.

counsel.[76] The court then instructed the prosecution to refrain from mentioning the phone call because evidence regarding the phone call had not been presented during trial due to the objection that was sustained.[77]

Neither the complained of questioning nor the prosecutor's comments were so persistent or pronounced that they permeated the entire atmosphere of the trial, violated the petitioner's substantial rights, or infected the trial with unfairness. Further, the objections to the questioning and comments were sustained by the trial court, which further lends to the conclusion that the complained of behavior did not render Petitioner's trial fundamentally unfair. "A criminal defendant seeking a reversal of his conviction for prosecutorial misconduct 'bears a substantial burden,'" and the Fifth Circuit has declined to reverse convictions even where the prosecutor's comments were admittedly inflammatory.[78] As stated in *United States v. Delgado*,

> Overturning a jury verdict for prosecutorial misconduct is appropriate only when, taken as a whole in the context of the entire case, the prosecutor's comments prejudicially affect[ed the] substantial rights of the defendant. In determining whether the defendant's substantial rights were affected, we consider three factors: (1) the magnitude of the prejudicial effect of the prosecutor's remarks, (2) the efficacy of any cautionary instruction by the judge, and (3) the strength of the evidence supporting the conviction. If the evidence to support a conviction is strong, then it is unlikely that the defendant was prejudiced by improper arguments of the prosecutor and reversal is not required.[79]

In the instant case, any prejudicial effect is insubstantial. The questioning directed to Mr. Pate was in relation to an alleged call made long after the crime and the contents of the phone call were not discussed. Further, Detective Dauthier did not even refer to the phone call when he

---

[76] Trial Court Record, pp. 649-50.
[77] Trial Court Record, pp. 649-50.
[78] *United States v. Delgado*, 672 F.3d 320, 337 (5th Cir. 2012), *quoting United States v. Virgen-Moreno*, 265 F.3d 276, 290 (5th Cir. 2001).
[79] *Id.* at 337 (citations and internal quotation marks omitted).

15

offered his opinion regarding why Mr. Pate had not come forward sooner or state that Mr. Pate was scared for any particular reason. Finally, although no cautionary instruction was requested or given at the time the objections were made, the jury was informed that they could not consider evidence regarding the phone call.[80] Specifically, after being excused for deliberation the jury questioned whether it could consider the phone call, to which the Court instructed the jury as follows: "You must consider only evidence which was admitted during the trial. You may not consider evidence which you were instructed to disregard or to which an objection was sustained. The court did sustain the objection regarding the phone call." Further, regarding the prosecutor's comments in closing argument, the trial court instructed the jury that "the opening statements and the closing arguments are not to be considered as evidence." Thus, the jury was appropriately informed by the court that statements made by the prosecution were not evidence.[81]

The prosecution's conduct within the context of the entire trial does not rise to the level of error necessary to render Petitioner's trial fundamentally unfair. Pursuant to *Brecht v. Abrahamson*,[82] "a constitutional trial error is not so harmful as to entitle a defendant to habeas relief unless there is more than a mere reasonable possibility that it contributed to the verdict."[83] It is only when the record is so evenly balanced that there is grave doubt as to whether the error had a substantial and injurious effect or influence in determining the jury's verdict that the error is not harmless.[84] Based upon a review of the record, the prosecutor's comments, evaluated in the

---

[80] *See United States v. Ramirez*, 61 F. App'x. 121 (5th Cir. 2003); *Ayo v. Cain*, 13-4580, 2015 WL 8475523 at *31 (E.D. La. Oct. 26, 2015) ("Jurors are presumed to follow their instructions").

[81] *Id.* ("The jurors were properly instructed that they were not to consider the prosecutor's arguments as evidence, and '[j]urors are presumed to follow their instructions'").

[82] 507 U.S. 619 (1993).

[83] *Nixon v. Epps*, 405 F.3d 318, 329-30 (5th Cir. 2005).

[84] *O'Neal*, 513 U.S. at 436. *See also Anderson v. Warden, Louisiana State Penitentiary*, 10-0529, 2013 WL 1405423 at *3 (W.D. La. Mar. 19, 2013) ("[E]rrors in the form of improper prosecutorial comment or jury instructions are subject to harmless error analysis [under *Brecht*] ... which asks whether the error had a substantial and injurious effect or influence in determining the jury's verdict").

16

context of the entire trial, did not render Petitioner's trial fundamentally unfair. As noted above, the evidence adduced at trial, provided ample proof of Petitioner's guilt, and the offending comments complained of by Petitioner were not focused upon or emphasized, were essentially unrelated to the crime with which Petitioner was charged, and did not have a substantial injurious effect or influence in determining the verdict, especially in light of the trial court's sustaining of objections related to references to alleged intimidation of Mr. Pate by Petitioner and the trial court's instruction to the jury during deliberations to disregard such information.

For the foregoing reasons, none of the alleged errors identified by Petitioner rise to the level of a violation of Petitioner's constitutional rights. Additionally, review of the record of Petitioner's trial, as a whole, reveals that Petitioner was not denied a fair trial.

### C. Certificate of Appealability

Should Petitioner pursue an appeal, a certificate of appealability should also be denied. An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."[85]  Although Petitioner has not yet filed a Notice of Appeal herein, the Court may address whether he would be entitled to a certificate of appealability.[86] A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right.[87] In cases where the Court has rejected a petitioner's constitutional claims on procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of a denial of constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."[88] In the instant case, reasonable jurists would

---

[85] 28 U.S.C. § 2253(c)(1)(A).
[86] *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).
[87] 28 U.S.C. § 2253(c)(2).
[88] *Ruiz v. Quarterman*, 460 F.3d 638, 642 (5th Cir. 2006).

17

not debate the denial of Petitioner's application or the correctness of the procedural ruling. Accordingly, it is appropriate that, in the event Petitioner seeks to pursue an appeal in this case, a certificate of appealability should be denied.

## VI. Recommendation

For the reasons set forth herein, it is **RECOMMENDED** that the Petitioner's application for habeas corpus relief be **DENIED** and that this proceeding be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that, in the event the Petitioner seeks to pursue an appeal, a certificate of appealability be **DENIED**.

Signed in Baton Rouge, Louisiana, on March 5, 2019.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**